Estate of Lovina R. York, Deceased, Stanley W. York, Executor v. Commissioner.
Estate of York v. Commissioner
Docket No. 3698-67.
United States Tax Court
T.C. Memo 1969-246; 1969 Tax Ct. Memo LEXIS 49; 28 T.C.M. (CCH) 1271; T.C.M. (RIA) 69246; November 20, 1969, Filed Robert W. Dernbach, for the petitioner. Bert L. Kahn, for the respondent. MULRONEY Memorandum Opinion MULRONEY, Judge: Respondent determined a deficiency in estate tax in the amount of $1,707.46. After a concession by petitioner, the only issue is whether the respondent properly valued, for estate tax purposes, the shares of certain open-end investment companies, commonly known as mutual funds shares. All of the facts were stipulated and they are so found. The petitioner is Estate of Lovina R. York, Deceased, stanley W. York, Executor. Stanley W. York's business address at the time this petition was filed herein was Eau Claire, Wisconsin. Lovina R. York died testate September 18, 1964, a resident of Eau Claire, Wisconsin. The Federal estate tax return of Lovina R. York was filed on December 16, 1965 with *50 the district director of internal revenue, Milwaukee, Wisconsin. On the date of her death, Lovina R. York owned shares in several mutual funds or open-end investment companies. These shares were valued by petitioner for estate 1272 tax purposes at the "bid" price as it appeared in the Wall Street Journal for September 18, 1964. The respondent, in his notice of deficiency, revalued these securities at the "asked" price (public offering price) as adjusted for quantity discounts on the date of death pursuant to sec. 20.20318(b), Estate Tax Regs. The following schedule lists the securities with the various values as determined by the parties: *90 Description
Number ofShares
Value at Date of Death
Per Return
As Revised
Adjustment
Boston Fund, Inc.
667
$ 7,023.51
$ 7,256.96
$ 233.45
Century Shares Trust
226
3,636.34
3,758.38
122.04
Massachusetts Investors Growth Stock Fund, Inc.
2,653
23,983.12
* 24,592.22
609.10
Massachusetts Investors Trust
3,956
67,528.92
69,783.84
2,254.92
Fidelity Fund, Inc.
303
5,553.99
6,005.46
451.47
Incorporated Investors
3,359 26,166.61
27,846.11
1,679.50 $133,892.49
$139,242.97
$5,350.48
*51 A mutual fund or open-end investment company is an organization which issues as many of its shares as can be sold through management companies or underwriters and continually offers its shares to the public. It also continually offers to redeem its shares from the holders thereof. Proceeds from the sales of mutual fund shares are invested in the securities of other corporations. There are several prices involved with respect to shares of mutual funds, namely, the "bid" price, the "asked" price, and the "asked" price as adjusted for quantity discounts. The "bid" price is the net asset value per share and is the amount the person willing to sell shares will receive. The "asked" price is sometimes referred to as the public offering price and is the net asset value per share plus a "sales charge" or "load". It is the price a purchaser will normally pay for a single share of a mutual fund. The "asked" price is reduced by a quantity discount for large purchases, based on the number of shares purchased. At the time of the decedent's death, net asset value was calculated twice daily by dividing the number of shares outstanding *52 into the net investment assets of the corporation. Net investment assets were determined by the fund as of 1:00 P.M. and as of 3:30 P.M. the close of the New York Stock Exchange (EST). The 1:00 P.M. price was effective from 2:00 P.M. to 4:00 P.M. of that day. The price calculated as of the close of the New York Stock Exchange was effective until 2:00 P.M. as of the next trading day. After arriving at a value of all securities held in this manner, the obligations of the fund would be deducted therefrom to arrive at net investment assets. There is no dispute between the parties as to what are the appropriate "bid" and "asked" prices. It is stipulated that "[the] valuations used by respondent in the notice of deficiency, being the 'asked' prices adjusted for quantity discounts * * * are in accord with § 20.2031-8(b), Estate Tax Regs." [1]
*53 Petitioner contends that the regulation is unreasonable and hence invalid. Petitioner recognizes on brief that this identical question has been previously presented to this Court and it was decided in respondent's favor. , on appeal (C.A. 6, Nov. 15, 1968). See also , affd., - F. 2d - (C.A. 7, 1969), wherein the same issue as to the validity of an identical regulation as applied to valuation for gift tax purposes was held to be reasonable and valid. The instant case is controlled by our decision in the Wells case. We again hold that sec. 20.2031-8(b), Estate Tax Regs., is reasonable and valid. Decision will be entered for the respondent. 1273 Footnotes
*. Amount is $186.80 too low, due to mathematical error.↩
1. Sec. 20.2031-8 Valuation of certain life insurance and annuity contracts; valuation of shares in an open-end investment company. * * * (b) Valuation of shares in an open-end investment company. (1) The fair market value of a share in an open-end investment company (commonly known as a "mutual fund") is the public offering price of a share, adjusted for any reduction in price available to the public in acquiring the number of shares being valued. * * *↩